## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ING BANK, fsb (d/b/a ING DIRECT) and,     :
ING DIRECT BANCORP,                               :
                   Plaintiffs,       :

                                   :
     v.                              :     Civ. No. 08-514-GMS-LPS
                                   :
THE PNC FINANCIAL SERVICES GROUP, INC.,:
PNC BANK, NATIONAL ASSOCIATION, and    :
PNC BANK, DELAWARE                   :
                                   :
             Defendants.     :

Francis DiGiovanni & Chad S.C. Stover, CONNOLLY BOVE LODGE & HUTZ LLP, Wilmington DE, and Jennifer Fraser, CONNOLLY BOVE LODGE & HUTZ LLP, Washington, DC, Attorneys for Plaintiffs.

Frederick L. Cottrell III & Michelle E. Whalen, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE, and Douglas A. Rettew and Danny M. Awdeh, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Washington, DC, Attorneys for Defendants.

## MEMORANDUM OPINION REGARDING
## MOTION TO DISMISS COUNTERCLAIM

June 22, 2009
Wilmington, Delaware.

Stark, Magistrate Judge:

Pending before me in this trademark infringement and dilution case is a motion to dismiss

(Docket Item ("D.I.") 41 and, hereinafter, "Motion") filed by Plaintiffs ING BANK, fsb (d/b/a

ING DIRECT) and ING DIRECT Bancorp (collectively, "Plaintiffs" or "ING"). For the reasons

discussed, the Court will deny Plaintiffs' Motion.[1]

## I. THE PARTIES' CONTENTIONS

By their Motion, Plaintiffs seek dismissal of a counterclaim filed by The PNC Financial

Service Group, Inc., PNC Bank, National Association, and PNC Bank, Delaware (collectively,

"Defendants" or "PNC") on February 6, 2009 as part of their First Amended Answer (D.I. 38) to

the First Amended and Supplemental Complaint (D.I. 31). PNC's counterclaim seeks

cancellation of ING's Orange Ball Design Mark registration due to alleged fraud on the U.S.

Patent and Trademark Office ("PTO"). Specifically, PNC alleges that while ING represented in

its application to the PTO that it was using the Orange Ball Mark in connection with credit card

services, in fact ING has not used the mark for credit card services.

ING argues that the fraud counterclaim should be dismissed because PNC fails to state

the facts and circumstances constituting fraud with particularity and fails to sufficiently state a

claim for relief. In particular, ING submits that PNC's counterclaim fails to adequately allege

scienter, makes an implausible allegation of a false statement by relying on third-party sources

---

[1]This matter was referred to me by order dated October 6, 2008. (D.I. 11) The parties
filed a Consent to Exercise of Jurisdiction on November 12, 2008 (D.I. 16), which was approved
by the Court on November 14, 2008 (D.I. 17). Accordingly, I am authorized to enter an Order
disposing of the case-dispositive motion to dismiss.
The parties completed briefing on the Motion on March 26, 2009. (D.I. 54) I held oral
argument on June 12, 2009.

(newspapers, magazines, and internet sites), and does not identify any injury PNC has suffered from the alleged fraud.

In response, PNC contends that it has alleged fraud with a sufficient degree of particularity and that ING Direct is able to admit or deny every portion of PNC's claim. In the alternative, PNC requests that if the Court finds its counterclaim insufficient it should be permitted leave to amend (a request Plaintiffs ask the Court to deny).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible

on its face" must be alleged. *Twombly,* 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 127 S. Ct. at 1966 (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver,* 82 F.3d 63, 69 (3d Cir. 1996).

In reviewing a motion to dismiss, "[c]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1195 (3d Cir. 1993). Certain additional materials may also be considered without converting a motion to dismiss into a motion for summary judgment (which generally cannot be ruled upon without providing a plaintiff a reasonable opportunity for discovery). For instance, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document . . . ." *Pension Benefit,* 998 F.2d at 1196 (internal citations omitted); *see also* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2009) ("The court is not limited to the four corners of the complaint, however.

Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.").

B.      Motion to Dismiss Pursuant to Rule 9(b)

In pertinent part, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Although date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are plead sufficiently "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

III.    ANALYSIS

ING claims to have identified numerous deficiencies in PNC's pleading. (D.I. 42 at 2) I have considered each of them and find that only three require discussion here.

First, ING alleges that PNC has failed to adequately allege the essential element of scienter. According to ING, PNC must allege that the "declarant" who signed the Statement of Use submitted to the PTO herself subjectively knew that ING did not use the Orange Ball Mark

for credit card services.  This, ING continues, is not alleged.

I do not agree with ING's characterization of the applicable law.  As the Fifth Circuit explained in a case relied on by ING (D.I. 54 at 4), *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004), to determine "whether a statement made by the corporation was made by it with the requisite . . . scienter" it is "appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment."[2] *See also In re Tyson Foods, Inc.*, 2004 WL 1396269, at *12 (D. Del. June 17, 2004) (citing *Southland*).  In other words, where a corporation is alleged to have made a fraudulent statement, the factfinder's attention is not limited to the subjective understanding of the corporate representative who made the statement – although the factfinder's consideration also does not stretch so far as to include everyone who was ever affiliated with the corporation.  A party alleging a corporation made a fraudulent statement may do so adequately by  alleging that the declarant or anyone at the corporation advising or assisting the declarant or anyone participating in any way in preparation of the allegedly false statement knew or should have known it was false.

Applying this standard to PNC's pleading demonstrates that PNC has adequately alleged scienter.  Here, in pertinent part, PNC alleges in its counterclaim:

---

[2]Although cited by ING, *Southland* is a securities fraud case, not a case involving fraud in connection with a trademark registration.  However, *Southland*'s analysis of the scienter element of a fraud claim is instructive with respect to the issue presented here.

8.      On November 8, 2000, Plaintiff ING Direct Bancorp, through its related company ING USA Holding Corporation (collectively "ING Direct Bancorp"), filed trademark application Serial No. 76977858 ("ING's Application") with the U.S. Patent and Trademark Office ("PTO") seeking to register the asserted Orange Ball Design Mark for, among other things, credit-card services.

9.      On October 11, 2005, ING Direct Bancorp filed a Statement of Use with the PTO, attached as Exhibit A.  The Statement of Use was required for ING's Application to mature to registration.  In its Statement of Use, ING Direct Bancorp declared that it was using the Orange Ball Design Mark for, among other things, credit-card services.  Deneen Stewart, then Secretary of ING Direct Bancorp, signed the Statement of Use and declared to the PTO that "all statements made of his/her own knowledge [were] true and . . . that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both . . . and that such willful false statements may jeopardize the validity of the application or any registration resulting thereof."

10.      The statements made by ING Direct Bancorp in its Statement of Use were material to the PTO's decision to allow ING's Application to mature to registration.  ING Direct Bancorp knew that the PTO would rely on its statements and made those statements with the intent to induce the PTO into allowing ING's Orange Ball Design Mark to register for credit-card services.

11.      Relying on the statements in ING Direct Bancorp's Statement of Use as true, the PTO allowed ING's Application to register for credit-card services . . . .

12.      Despite ING Direct Bancorp's representation to the contrary, neither ING Direct Bancorp nor any of its related companies were using or had ever used the Orange Ball Mark for the "credit card services" identified in ING's Statement of Use and the ING Application.

13.      Plaintiffs knew or should have known that the statements in ING Direct Bancorp's Statement of Use were false when they were made.  Plaintiffs' CEO Arkadi Kuhlman has publicly stated that he refuses to offer credit cards to his customers and that credit cards

are "the opium of consumerism."

(D.I. 38)

Both these allegations and the Statement of Use – which forms the basis for the counterclaim, and is attached to it (and which the Court may properly consider in resolving the Motion) – establish that the declarant is Deneen Stewart, Secretary of ING Direct. It is clear from the Statement of Use, however, that Stewart was not filing the Statement of Use personally but, instead, on behalf of the "Applicant," that is, "ING USA Holding Corporation." The Statement of Use further indicates that Stewart "declares and states that he/she is an officer or authorized representative of the applicant and is properly authorized to execute and sign this Statement of Use."

It is a reasonable inference that Stewart, as Secretary of the Applicant, did not prepare the Statement of Use entirely by herself. Certainly, PNC has not alleged that she did. PNC's broad allegation that "Plaintiffs knew or should have known that the statements in ING Direct Bancorp's Statement of Use were false when they were made" is not limited to Stewart's subjective knowledge. Nor, as described above, need it be; the universe of individuals to look to in assessing the adequacy of a scienter allegation is not limited to the declarant herself. At this stage of the proceedings, it is sufficient to allege, as PNC has done, that the Applicant, ING, acted with scienter. Drawing all reasonable inferences in PNC's favor, PNC has alleged that among those involved in the preparation and filing of the Statement of Use were those who knew or should have known that ING had not used the Orange Ball Mark in connection with credit card services. This allegation has sufficient plausibility to withstand dismissal, particularly given that it is further alleged that "Plaintiffs' CEO Arkadi Kuhlman has publicly stated that he refuses

7

to offer credit cards to his customers and that credit cards are the 'opium of consumerism.'" (D.I. 38 ¶ 13)[3]

Second, ING insists that PNC failed even to allege that the Statement of Use contains a false statement. But the counterclaim is more than adequate with respect to this element of fraud. The counterclaim alleges that "[i]n its Statement of Use, ING Direct Bancorp declared that it was using the Orange Ball Design Mark for, among other things, credit-card services." (D.I. 38 ¶9) It continues: "[d]espite ING Direct Bancorp's representation to the contrary, neither ING Direct Bancorp nor any of its related companies were using or had ever used the Orange Ball Mark for the 'credit card services' identified in ING's Statement of Use and the ING Application." (Id. at ¶12) This is an allegation with particularity of a false statement.

Finally, ING complains that PNC failed to articulate with particularity any injury in association with the alleged fraud. ING observes that even if its federally registered rights in the Orange Ball Mark were invalidated, it might retain other federal and common law rights in the same mark; therefore, PNC cannot plausibly contend that it is injured by a fraudulent federally registered trademark. However, PNC has alleged that "neither ING Direct Bancorp nor any of its related companies <u>were using or had ever used the Orange Ball Mark for the 'credit card services.'</u>" (D.I. 38 ¶12) (emphasis added) Because no rights can arise in a mark that is never used, it follows (at this stage of the proceedings) from PNC's allegations that ING did not have any rights of any kind in the Orange Ball Mark in connection with credit card services.

_____

[3]ING's criticisms of the veracity and timeliness of the third-party sources for PNC's allegation about ING's CEO's views about credit cards miss the mark. Even if these sources are ultimately proven to be inaccurate, PNC's allegation that ING's CEO "refuses to offer credit cards to his customers" must be taken as true at this stage of the proceedings.

Therefore, PNC's assertions that "ING Direct Bancorp's false statements have damaged and injured PNC and, if ING Direct Bancorp is permitted to maintain the '848 Registration, will further damage and injure PNC," and its request for an order "pursuant to 15 U.S.C. § 1120, that Plaintiffs pay PNC damages resulting from Plaintiffs' fraud on the US Patent and Trademark Office," are sufficient to survive ING's Motion. (D.I. 38 ¶15 & c. at 18)

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny ING's Motion to Dismiss. An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ING BANK, fsb (d/b/a ING DIRECT) and, | : | |
| ING DIRECT BANCORP, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. No. 08-514-GMS-LPS |
| | : | |
| THE PNC FINANCIAL SERVICES GROUP, INC.,: | | |
| PNC BANK, NATIONAL ASSOCIATION, and | : | |
| PNC BANK, DELAWARE | : | |
| | : | |
| Defendants. | : | |

## ORDER

At Wilmington, this 22nd day of June 2009, for the reasons set forth in the Memorandum

Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiffs' Motion to Dismiss (D.I. 41) is DENIED.


_____
The Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE